UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT FRANKFORT

| | |
|---|---|
| KEITH PETERSON, *Individually, and on behalf of a class of all persons and entities similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC SERVICES OF KENTUCKY, LLC,<br><br>Defendant. | Case No.: 3:26-cv-00021-REW<br><br>***Electronically Filed*** |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUBSTANTIVE RESPONSES TO CERTAIN WRITTEN DISCOVERY REQUESTS</u>**

The Court's recent order bifurcating discovery (Dkt. 53) (the "Bifurcation Order") effectively moots Plaintiff's Motion to Compel Substantive Responses to Certain Written Discovery Requests (the "Motion"). The requests at issue (the "Requests") seek information about *specific phone calls* placed to absent members of the putative class and to customers of Republic Services of Kentucky LLC ("Republic"), and the Court has ruled in the Bifurcation Order that such discovery is deferred until after a class is certified, if a class is ever certified. These Requests also impose an extraordinary burden that outweighs any possible probative value prior to any class being certified. For these reasons, Republic respectfully requests that the Court deny Plaintiff's Motion.

**<u>The Requests at Issue</u>**

Plaintiff brings his TCPA claim against Republic based on calls containing recorded messages that he received about a past due account. Plaintiff alleges that he was never actually a customer of Republic and that these calls were placed to him in error, and he seeks to certify a

class of others who received pre-recorded messages in error. On June 9, Plaintiff tendered broad discovery requests to Republic, which included requests seeking information about every prerecorded message ever sent by or on behalf of Republic since November of 2021 and about Republic's relationship with every call recipient, as well as to compel Republic to identify which of those calls were made to wrong numbers. Republic responded by agreeing to produce requested information about the calls to the named plaintiff, Republic's general calling policies and practices, the scripts used for the calls placed to Plaintiff, and the vendor Republic used to send the messages to Plaintiff. Republic objected, however, to producing data relating to specific calls to absent putative class members, asserting that these burdensome requests were premature prior to any class being certified, and that such information about wrong number calls (if available at all) could only be located by manually reviewing every call note and call recording for at least tens of thousands of incoming calls to Republic's customer service line during the last four and a half years. Republic further objected to the requests to produce all information about every outbound call using a prerecorded voice placed in the last four years – to absent class members and non-class members – as overly burdensome and not relevant to any class that could ever be certified. Republic subsequently moved to bifurcate class discovery from discovery into the named plaintiff's claim and class certification issues, and the Court granted that motion. Republic believes that the Court's Bifurcation Order effectively moots the instant motion, but Plaintiff asserts that the Order has no effect on this motion. Plaintiff's position has already been rejected by this Court, which recognized the significant overlap between the two motions when it deferred briefing and consideration of this motion until after the decision on bifurcation.

Plaintiff is, of course, entitled to discovery bearing on the Rule 23 certification requirements for his proposed class, and Republic does not dispute that some class-certification

discovery is appropriate during Phase I. But each of the Requests goes further: rather than seeking information about Republic's general calling practices, policies, and systems—the kind of discovery that bears on numerosity, commonality, and ascertainability at the class level—the Requests seek the *specific* telephone numbers, calls, and records concerning the individual absent members of the putative class and others.

Interrogatory 7 asks Republic to "Identify the number of unique telephone numbers to which Defendant made, or caused to be made, a call or calls in connection with which it used an artificial or prerecorded voice." Dkt. 51-1 at 6. Interrogatory 8 then seeks further information about "the telephone numbers Defendant identifies through its answer to interrogatory no. 7," and Interrogatories 9-13 seek still further information about those same telephone numbers. Interrogatories 14, 15, and 19 likewise seek information about the *identities* of the persons or numbers falling within the proposed class definition and the telephone numbers used to call them.

Similarly, Requests for Production 6 and 7 seek documents "sufficient to identify Defendant's use of an artificial or prerecorded voice in connection with outbound calls to customers, plan holders, potential customers, or leads" and documents that "identify the unique telephone numbers to which Defendant made, or caused to be made, a call or calls in connection with which it used an artificial or prerecorded voice." *Id.* at 19-20. Requests for Production 8-13 seek additional documents tied to those same telephone numbers, and Requests for Production 14-16 and 35 seek additional documents concerning the persons or numbers within the proposed class definition. Each of these Requests, like the related interrogatories, otherwise relates to *specific* calls made to absent putative class members and others. Each of these Requests therefore seeks merits discovery into the claims of specific, individual absent class members—not the class-wide

calling-practice discovery that the Court's bifurcation order permits during Phase I—and each falls within the category of discovery the Court has deferred unless and until a class is certified.[1]

Republic's primary response to these Requests was to object to them as premature prior to class certification. Republic also objected that the Requests were overly burdensome and not relevant to any class that could ever be certified. Regarding the requests to identify every call that contained a prerecorded message, Republic pointed out that this would require production of records of tens of thousands of calls that Republic has no reason to believe went to non-customer putative class members (and Republic has since learned that the total number of outgoing informational calls containing pre-recorded voices during the relevant time period actually exceeds 4 million). *See* Dkt. 51-1 at 6, 19-25; **Exhibit 1,** Declaration of Tim Ward ("Ward Decl.") at ¶5. For those requests that ask about wrong-number calls only, Republic explained that the only way it would know about a wrong number call would be if the called party subsequently called Republic's customer service line to report the wrong number. *See* Dkt. 51-1 at 7. Republic recognized that the number of such calls could be relevant to the issue of numerosity, and so Republic performed what it believed to be a reasonable search for responsive information and reported the results of that search. It objected, however, to going beyond that reasonable search to review each of the records of the tens of thousands of individual incoming calls to Republic's customer service number.

Republic described the results of its reasonable search for information about the number of calls made with prerecorded messages to persons who were not customers of Republic in response

[1] Request for production 36 is slightly different than these, but also seeks detailed information about absent class members' specific numbers. It seeks documents relating to Defendant's "use of the Federal Communications Commission's Reassigned Numbers Database" including all documents reflecting every time Republic or its agents accessed that database or scrubbed any number against it.

to Interrogatory number 7 (asking for information about every prerecorded message sent by Republic). In relevant part, Republic stated:

> Subject to and without waiving these objections [on grounds of prematurity and the undue burden of a request for information about all prerecorded calls in a case that is limited to calls made to non-customers], Defendant states that it does not know how many calls it made or caused to be made to non-customers using an artificial or prerecorded voice. Defendant only knowingly calls its own customers or former customers using artificial or pre-recorded voices. Such calls are placed to non-customers only by mistake (such as when Republic has the wrong number for a customer in its records or possibly when a number has been misdialed). Defendant does not maintain any list of persons for whom it once had an incorrect number in its records and maintains no logs of wrong number calls or misdialed calls. Defendant does not require persons who change a telephone number in Defendant's customer records to record any narrative explaining the change or the reason for it, and there is no code or other standardized notation for wrong number calls that would allow them to be readily located within Defendant's records. Further, Defendant is only aware that it has contacted a wrong number if the called party affirmatively reaches out to advise Defendant or its vendor of the error. Thus, Defendant would have to review every call note and listen to every call recording for tens of thousands of calls in order to try to discover any instances of calls to wrong numbers—and even such a labor intensive, time-consuming review would likely not capture every wrong number or misdialed call. The extraordinary burden attendant to reviewing each and every call record and recording is patent and far outweighs any probative value here. Defendant also states that its legal and marketing departments are not aware of any widespread reports of wrong number calls or of any actual or threatened lawsuits based on the same.

Dkt. 51-1 at 7.

Republic also provided information in response to portions of Interrogatory No. 19 and Request for Production 36. In response to Interrogatory No. 19 (asking Republic to identify all phone numbers it placed or caused to be placed outgoing calls using artificial or prerecorded voices during the relevant time period), Republic identified the only outgoing number used to call Mr. Peterson, while objecting to the request as premature to the extent that it sought information about outgoing numbers used to call others. *See* Dkt. 51-1 at 15-16. In response to Request for Production 36 (asking for "information sufficient to identify Defendant's use of the Federal

Communications Commission's Reassigned Numbers Database, including the results of any searches or scrubs Defendant performed on any telephone numbers referenced by these discovery requests"), Republic agreed to produce "non-privileged documents responsive to this request as they pertain to: (1) policies, procedures and training regarding the use of the Reassigned Number Database, and (2) telephone number (502) 487-7142, to the extent such documents exist and are reasonably available" but objected to the extent that the Request sought reports of scrubbing each absent class member's number against the Database. Dkt. 51-1 at 36. Republic has subsequently determined that it does not possess any such documents.[2]

Republic subsequently filed its Motion to Bifurcate Discovery on July 30, 2026. Plaintiff filed his Motion to Compel a month later, and the Court stayed briefing on the Motion to Compel until after resolution of the Motion to Bifurcate, presumably in reaction to the overlap between the issues raised in the two motions. *See* Dkt. 52. Thereafter, the Court granted Republic's motion to bifurcate and limited precertification discovery to "the merits of Plaintiff's individual claims and facts relevant to whether a class can be certified under Federal Rule of Civil Procedure 23" and deferred "[a]ll discovery into the merits of specific absent class members' individual claims" until if and after the Court certifies a class, citing the burdens that broad, classwide discovery would impose. *See* Dkt. 53. The Bifurcation Order also directed Republic to respond to the instant Motion.

On October 7, Republic's counsel conferred with Plaintiff's counsel to determine what, if any, Requests at issue in this motion remained in dispute following the Bifurcation Order. Plaintiff's counsel asserted that the Order has no effect on the relief Plaintiff is seeking here.

---

[2] Republic has also advised Plaintiff that it is willing to testify about its calling practices in deposition, but the Rule 30(b)(6) deposition notice that Plaintiff tendered on October 8 raises the same issues as the instant motion, demanding testimony about the specific circumstances of every call that was made using a prerecorded message during the relevant time period. The parties await the Court's guidance on this motion before proceeding with this deposition.

## Argument

### A. The Motion To Compel Is Effectively Moot After the Bifurcation Order

Republic believes that the Bifurcation Order effectively moots the instant motion. That order limits discovery to "the merits of Plaintiff's individual claims and facts relevant to whether a class can be certified under Federal Rule of Civil Procedure 23" and defers, until *after* a certification decision, "[a]ll discovery into the merits of specific absent class members' individual claims." Dkt. 53 at 6. The Requests at issue seek this deferred category of information, demanding detailed information about specific calls made to absent class members and others, as well as account data for every person and organization to whom Republic sent a prerecorded message in the last four and a half years.

Plaintiff seeks to relitigate the bifurcation issue here. Indeed, Plaintiff's Motion rests on almost all of the same cases on which it relied in opposing bifurcation. But the Court has already decided that discovery into individual class members' claims will be deferred unless and until a class is certified. Plaintiff offers no grounds to revisit that decision.

### B. Republic Has Agreed to Fully Respond to the Requests to the Extent that They Relate to Calls to Plaintiff Keith Peterson and Republic's General Calling Practices

To the extent that the Requests seek information about calls to named Plaintiff Keith Peterson, Republic is responding fully to the Requests. Plaintiff does not dispute this.

Republic also agreed to produce policies and procedures relating to its calling practices, to the extent that such documents exist. It has also agreed to produce a representative for deposition, where Plaintiff will be free to ask about Republic's general calling practices. These actions are sufficient under the Bifurcation Order.

### C. Republic Has Performed a Reasonable Search to Determine How Many Times It May Have Caused Other Wrong Numbers to Be Called, and It Would Be Unduly Burdensome to Require It to Do More.

Notwithstanding the Bifurcation Order, Republic has also conducted a reasonable search for reasonably available information about how many calls may have been placed on its behalf using prerecorded voices to numbers that did not actually belong to Republic customers at the time of the calls, given the potential relevance of this information to the issue of numerosity. Republic asked the personnel in its legal and marketing departments whether they knew of other complaints about calls mistakenly placed by or on behalf of Republic to non-customers using prerecorded voices, and those employees did not recall any such complaints, other than this lawsuit. Republic also searched for records of prior lawsuits against Republic making such allegations during the putative class period, and it located none.

Particularly in light of the Court's ruling on bifurcation, it would be unduly burdensome to require Republic to do more than this reasonable search to find specific calls that might have been sent to a wrong number prior to any class being certified. As Republic explained in its interrogatory responses, these were informational calls intended for customers and only would have gone to wrong numbers by mistake. Because these were recorded messages and not live calls, there was no feedback received during the call about whether a wrong number had been reached, and, unlike many of the cases cited by Plaintiff, there was no sales agent on the line to note that feedback or assign some sort of wrong-number disposition code to a call note that could be easily searched. Republic made no effort to hide its connection with these recorded messages, with the messages including the customer service number for Republic, but Republic would only know about any mistaken calls if the called party subsequently contacted Republic at the number included in the recorded message to alert Republic that the notice had been misdirected.

This kind of misdirected call is not known to have been a widespread problem at Republic. As affirmed in the interrogatory responses, Republic only places these calls to numbers that have been provided to it by its customers, no other lawsuits have been filed against Republic about such calls during the putative class period, and no one in the marketing or legal departments knows of any complaints about such calls other than Plaintiff's by Republic. There is also no reasonable way for Republic to identify all seemingly rare misdirected calls. If there were other call recipients who contacted Republic to alert it to a misdirected call, the Republic representative who received the subsequent call could have simply deleted or changed the number for the customer in Republic's records, or it could have noted the reason for the call before changing or deleting a phone number in the company's records.

The September 16, 2025 note that reflects a call relating to the Plaintiff's alleged phone number here demonstrates why it is not possible for Republic to identify wrong number calls without a burdensome manual review of every note or call recording connected to every one of its accounts during the class period – and even then, the results would be incomplete and unreliable. Republic has no account under Plaintiff's name. The September 16th record appears within the account file for the customer Republic intended to reach and includes a notation referencing a "mr patterson" (mis-spelling Mr. Peterson's name, if that is the person to whom it was intended to refer) and explaining that the "Informed caller says he doesnt have serv with us and we keep calling him." *See* Dkt. 50-1. The entry says nothing about "wrong number" or "misdial" or any other similar, distinctive term that could have been searched to find the note. The only way Republic was able to locate it was by looking for the specific phone number that Plaintiff has put at issue. The burden of performing such a review of account and call records for every one of Republic's tens of thousands of accounts and tens of thousands of incoming calls to customer service during

the class period is patent and outweighs any possibly probative value to the current issues in the case which are: (1) the merits of Plaintiff's individual claim and (2) whether a class can be certified.

Republic also does not need to undertake a burdensome search to try to find what seem to be, at most, rare instances of wrong number calls in order for the Court to evaluate whether the putative class would satisfy Rule 23(b)(3). First, Republic agrees not to challenge the numerosity prong of Plaintiff's Rule 23 burden, given the number of calls that were made during the relevant time period and the difficulty of searching the records. Second, the records at issue will not change the fact that individualized issues will necessarily predominate in any class trial here, given that Republic only called customers at the numbers they provided, and there is no common proof that could show which call recipients were actually called in error.

Multiple courts faced with similar putative wrong-number classes have explained that such classes are not appropriate for certification because their membership is not clearly ascertainable as required by Rule 23, and because individualized issues will necessarily predominate in that each class member's claim will require individualized proof that he or she was called in error. *See, e.g., Sliwa v. Bright House Networks, LLC,* 333 F.R.D. 255, 280 (M.D. Fla. 2019); *Davis v. AT&T Corp.,* 2017 WL 1155350 at *5-6 (S.D. Cal. March 28, 2017); *Wilson v. Badcock Home Furniture,* 329 F.R.D. 454, 457-59 (M.D. Fla. 2018); *Hunter v. Time Warner Cable Inc.,* 2019 WL 3812063 at *17 (S.D.N.Y. Aug. 14, 2019); *Davis v. Capital One, N.A.,* 2023 WL 6964051 at *15 (E.D. Va. Oct. 20, 2023); *Sandoe v. Boston Scientific Corp.,* 333 F.R.D. 4, 9-10 (D. Mass. 2019); *Tillman v. Ally Financial Inc.*, 2017 WL 7194275 at *7 (M.D. Fla. Sep. 29, 2017). Even in cases where the defendant has had records that reflect wrong-number notations (unlike here), many courts have still found that there would need to be individualized fact-finding to determine whether a wrong number had actually been called and denied certification. *See e.g., Sliwa,* 333 F.R.D. at 272

(declining to certify the class on ascertainability and predominance grounds and noting that "identifying the members of Plaintiff's proposed classes would require significant individualized inquiries" beyond the face of the records since "in the debt collection industry 'wrong number' oftentimes does not mean non-consent because many customers tell agents they have reached the wrong number, though the correct number was called, as a way to avoid further debt collection"). Courts hearing such cases have also noted the extraordinary and impermissible burden of requiring a defendant to analyze all of its call records to try to discover evidence of wrong number calls. *See Warnick v. Dish Network LLC*, 301 F.R.D. 551, 558 (D.Colo. 2014) (refusing to grant certification of a wrong-number class because the class was not ascertainable and observing that it would "impose an enormous and disproportionate burden on [the defendant]" to go through its call records and try to find potential class members).

In response to Republic's motion to bifurcate, Plaintiff purported to cite cases in which wrong-number classes had been certified, but he did not cite any binding authority that certifies such a class, and the out-of-district cases he cited do not, as he claimed, involve "materially similar" situations. In each case Plaintiff cited, there was an existing database, spreadsheet, set of records with a specific disposition code for wrong numbers, or other systematic mechanism that already identified wrong-number calls, causing the court to conclude that class-wide identification was a matter of querying existing data rather than manually reviewing tens of thousands of individual call notes and recordings one by one.[3] *See Elliot v. Humana Inc.*, No. 3:22-CV-00329-RGJ, 2025 WL 1065755, at *4 (W.D. Ky. Apr. 9, 2025) (certifying wrong-number TCPA class

[3] Even in cases where there are wrong number notations in a defendant's records, as the *Sliwa* court explained, such notations do not themselves prove that a wrong number was actually called (only that someone avoiding a debt may have said it was). Thus, in addition to being distinguishable, Republic submits that the cases that Plaintiff cites are wrongly decided, and that the courts that have declined to certify wrong-number cases have correctly applied the requirements of Rule 23.

where defendant's CGX database expressly identified 23,682 phone numbers marked as "wrong number," allowing class members to be identified through existing records and database queries rather than individualized review of call files and recordings), petition for interlocutory review denied by *In Re: Humana, Inc.*, 163 F.4th 376 (6th Cir. 2025); *Saggio v. Medicredit, Inc.*, 351 F.R.D. 141, 145 (E.D. Mo. 2026) (involving similar records); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973, at *1 (W.D. Wash. Oct. 13, 2023) (same); *Wesley v. Snap Fin. LLC,* 339 F.R.D. 277, 289 (D. Utah 2021) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145, 150 (D. Ariz. 2022) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV, 2018 WL 3145807, at *1 (S.D. Fla. June 26, 2018) (same*); Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-CV-00934-WJ/LF, 2018 WL 2694457, at *1 (D.N.M. June 5, 2018) (same); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 299-300 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (same); *Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590, 597 (C.D. Cal. 2021) (same). Each of these cases also involved evidence of widespread wrong-number calling by the defendant. Unlike these cases, Republic has no such existing set of records, and there is no indication that this was a routine issue.

Republic has made a reasonable search for records of wrong number calls, and there is no reason to require it to do more when (1) it is willing not to dispute numerosity on a motion for class certification, and (2) such records are not otherwise necessary to decide class certification or the merits of Mr. Peterson's individual complaint.

**D. Plaintiff's Request for All Call Data is, Likewise, Unduly Burdensome.**

In contravention of the Bifurcation Order, Plaintiff also claims that Republic should be compelled now to produce *all* data and account records relating to *all* pre-recorded voice calls in the last four and a half years, whether such calls were made to customers or others. Plaintiff wants

to run these records through public databases to identify where the reverse-lookup databases name someone other than the customer name in Republic's records as the likely owner of the number. As explained below, though, this would require production of an enormous volume of records, and it would not be relevant to either Mr. Peterson's individual claim or whether the putative class satisfies Rule 23.

Republic *currently* has over 100,000 customers, and many more if customers from any time since November of 2021 are added. Ward Decl. at ¶4. Republic has placed informational pre-recorded calls regarding overdue account balances or interruptions to customers' waste removal service to a significant percentage of its customers since then. This would involve records of millions of calls (Ward Decl. at ¶5), as well as the associated customer records for every one of the tens of thousands of customers Republic was trying to reach. The production of this enormous volume of records is plainly contrary to the Bifurcation Order.

Indeed, such a massive production would not even be warranted in the second phase of discovery. Multiple courts have held that this kind of reverse number database search is not reliable to prove whether class members' numbers were called in error with common proof. *See, e.g., Hunter*, 2019 WL 3812063 at **4, 15; *Wilson*, 329 F.R.D. at 457-58; *Davis*, 2023 WL 6964051 at **9-11; *Sandoe*, 333 F.R.D. at 8-9; *Carroll v. SGS Automotive Svcs., Inc.*, 2020 WL 7024477 at *5 (M.D. La., Nov. 30, 2020); *Balschmiter v. TD Auto Finance LLC*, 303 F.R.D. 508 (E.D. Wis. 2014).[4] As these – and many other – courts have noted, the publishers of these

[4] Republic anticipates that Plaintiff is likely to point to the Sixth Circuit's decision in *In re Humana, Inc.*, 163 F.4th 376 (6th Cir. 2025) as supporting the use of reverse number lookup databases in TCPA cases and the ability to certify classes based on the same, but the Court only decided there to reject a Rule 23(f) appeal of the Western District's decision to certify a wrong number class, rather than deciding the merits of the dispute. Indeed, the Court specifically noted that the interlocutory nature of the order made it particularly inappropriate for review because the district court had "stated multiple times that it might reconsider class certification" and a pending summary judgment motion might also end the case anyway. *Id.* at 384-85. Further, in rejecting the interlocutory appeal, the Court emphasized the abuse of discretion standard that would apply to any review, and also distinguished the record of high error rates that

*(Footnote continued)*

databases expressly disclaim suitability of these databases for this use, they cannot determine exactly when a number has been reassigned, and they are known to have high error rates. *See id.; Hunter*, 2019 WL 3812063 at *11 (noting that LexisNexis has affirmed that its database "cannot be used to determine definitively the subscribers or customary users of a telephone on a current or historic basis. Nor can [it] be used to identify when a telephone number was 'reassigned' from one person to another, or when the 'customary user' of a phone number changed," and that "[o]ther reverse-lookup database providers acknowledge similar shortcomings in their products" and that the FCC has recognized that "commercial databases that track phone number assignment are not comprehensive") (internal citations omitted); *Davis*, 2025 WL 2445880 at *2 (finding 75% error rate with sample from use of reverse lookup in that case).

Indeed, *Plaintiff "Keith Peterson" is not even definitively identified as the user associated with the number at issue here* by several popular reverse-number databases. For example, the first name associated with the number in the database maintained by idiCore is Berta Mae Peterson Smith. *See* **Exhibit 2**, Declaration of Darci Madden ("Madden Decl.") at Ex. A. Lexis Nexis returns Daryl Peterson as the Caller ID associated with the number and shows Berta Mae Smith-Peterson as the person most recently associated with the number. *Id.* Ex. B. TransUnion shows that the phone number was associated as of 9/1/2026 with either Daryl K Peterson, Savannah Hicks, or Joseph Wheatley (rating the likelihood of each association as between 66% and 86%), and then lists several other individuals for other periods of time or without noting a period of time for the association. *Id.* Ex. C. Westlaw identifies Daryl Peterson as associated with the number. *Id.* Ex. D.

---

had been developed in other cases excluding the plaintiff's supposed reverse-lookup expert from the sparser record developed below in the case it was being asked to review.

The reverse lookup services' references to "Daryl Peterson" of "Daryl Keith Peterson" may actually refer to Plaintiff, but the differences between the names on these reports and the Plaintiff's name in the caption here reveals a further limitation of Plaintiff's proposed method for proving liability with common proof. Many people – like this Plaintiff – use different names for different purposes. Plaintiff chose to call himself "Keith Peterson" when he filed this lawsuit, but then identified himself as Daryl Keith Peterson in interrogatory responses. Madden Decl. Ex. E. Whether the "Keith Peterson" who filed this case is actually the same person as the "Daryl Peterson" referred to by a third-party in a report is something that cannot be resolved without individualized proof. Such issues will make any class trial unmanageable and any class unascertainable, and individualized issues will predominate.

In any event, Plaintiff does not need to perform these searches now. The results of any such search are not relevant or necessary to either the merits of the named Plaintiff's claim or the class certification decision.

## **Conclusion**

The Court has bifurcated discovery and deferred discovery into calls made to absent class members (Dkt. 53). That decision effectively moots Plaintiff's Motion, which seeks to compel Defendant to produce information and documents relating to specific calls made to absent class members and others. Defendant has fully responded to the Requests to the extent they seek information about the named Plaintiff's specific claim and about issues relevant to the class certification decision. Further, it would be unduly burdensome to require Defendant to do more than it has already done in light of the host of decisions holding that classes of the type that Plaintiff proposes here cannot be certified. For all of these reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion.

Respectfully submitted,

*/s/ Daniel E. Danford*

Darci F. Madden (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2366
Email: Darci.Madden@bclplaw.com

Janessa Ella Jean Jacques (admitted *pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7111
Email: Janessa.jeanjacques@bclplaw.com

Daniel E. Danford
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, Kentucky 40507-1758
Telephone: (859) 226-2292
Email: ddanford@stites.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2026, the foregoing opposition was electronically filed with the Court via the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ Daniel E. Danford*
Daniel E. Danford